LOTTINGER, Judge.
This is a suit instituted by Isaac Des Ormeaux against L. P. Dufour for damages for the alleged conversion by the latter of two cows sold by him to the plaintiff. The petition alleges that on or about the last day of June, 1950, the parties entered into an agreement whereby the plaintiff bought from the defendant fifty head of cattle, which were composed of twenty-five head of Holstein cows and twenty-five head of Jersey cows. The allegation is made that at about the same time, the defendant delivered the cattle, which were accepted by petitioner, but that on or about the first day of July, the defendant unlawfully removed two of the Holstein cows and replaced same with two inferior Jersey cows. The petition then goes on to allege that the petitioner protested this switch and that as a result thereof, the defendant agreed to bring two Holstein cows which would be acceptable to petitioner in the month of October. Various allegations are made regarding the damages sustained by petitioner as the result of the loss of the cattle, the loss of milk which they would have produced and the loss of calves to be born to them and the petition concludes with a prayer for damages in the sum of $2,100.
The defendant first filed exceptions of no right or cause of action and vagueness. The former were overruled and an amended petition was filed in response to the latter. Subsequently, the defendant answered admitting the sale of fifty head of cattle to petitioner but generally denying the remaining articles of the petition. The affirmative allegation is made that the petitioner accepted and purchased twenty-three head of Holstein and twenty-seven head of Jersey rather than twenty-five head of each as alleged in his petition. It is alleged in the answer, however, that subsequent to the sale, and during the early part of July, 1950, the parties entered into a verbal *151 agreement whereby the petitioner was to give to the defendant two Jersey cattle in exchange for two Holstein cattle which exchange was to be consummated in the month of October of that year. The defendant averred that he had tendered the Holsteins and was at all times willing to comply with the terms of the agreement; that he was prevented from so doing by the refusal of the plaintiff to comply with same. Alternatively, it is set forth that as a result of the failure of the plaintiff to comply with the exchange contract, the defendant lost the value of two calves which were born to the two Jersey cows, milk which was produced by them as well as certain sums for mental anguish, annoyance, etc. The prayer of the reconventional demand is for damages in the sum of $2,320.
The matter was duly tried on the merits in the court below following which judgment was rendered rejecting each party’s demands against the other and ordering that plaintiff pay all costs of the proceedings. Subsequently, the plaintiff appealed to the Supreme Court, which found that the plaintiff’s claims were inflated, and, having no jurisdiction, transferred the appeal to us. See Ormeaux v. Dufour, 229 La. 287, 85 So.2d 518.
Counsel for the plaintiff first called the defendant on cross-examination and the latter testified that the agreement to sell the cattle was made during the latter part of May, 1950. At that time the defendant’s herd was located on property belonging to a Dr. Comeaux, which was under lease to the defendant and at the time of trial, was under lease to the plaintiff. This witness testified that the agreement was made whereby he was to sell to the plaintiff twenty-five head of Holstein cattle and twenty-five head of Jersey cattle for an average price of $240 per head or a total of $12,000. He stated that while the particular cattle involved in the sale were not pointed out, it was understood that twenty-five head of each breed were to be delivered and that he in fact received a check in the amount of $12,000 in payment for the cattle. According to the defendant, he had 100 head of cattle on the place, 'which consisted of seventy-three head of Jersey cows and heifers and twenty-five head of Holstein cows and two head of Holstein heifers. He stated that he delivered to the plaintiff only twenty-three Holsteins, the reason therefor being that the two cows had been removed from the premises by mistake.
He stated that he so informed the plaintiff on June 28th and agreed to return the two Holsteins in exchange for the two Jerseys in the month of November, 1950, and, while he admitted that he had never delivered the cattle, he stated that he was still willing to’ abide by the agreement.
On direct examination, the defendant reiterated that the agreement had been made to interchange the Jerseys for the Holsteins and stated further that a Mr. Mor-vant had offered to go and get the Holsteins for the plaintiff. He further stated that he offered to show the cows to the plaintiff but that the latter refused to view same and likewise refused to keep an appointment at an attorney’s office during the month of November relative to clarifying the matter. He reiterated that the Holsteins were removed by mistake and that he was never successful in carrying out the exchange agreement because of the failure of the plaintiff to come to his place and pick out the Holsteins that he wanted. On cross-examination, he recited further that he had both Holstein cows and heifers and that plaintiff could have had his choice. The cross-examination was concluded by the defendant stating that he had never returned the Holsteins to the plaintiff nor had he ever sent for the Jerseys which belonged to him.
The plaintiff testified that he knew that the two Holsteins were taken out of the herd leaving only twenty-three of that breed and that while the defendant did offer him two Holsteins subsequently, the offer was only of two little Holsteins rather than the two large ones which he had taken. This offer, he stated, was made not only at that time, but once or twice afterwards. On cross-examination, the plaintiff testified that the two Jerseys which defendant *152 had left had died, one of them during the year 1951 and the other one later. Plaintiff further stated that he did not feed the two Jersey cows left with him. He testified that while the defendant offered him two “little bitty” Holsteins, which were not worth the Jerseys which had been left with him, he never saw them nor attempted to see them. He stated further that he did not deliver to the defendant the Jerseys and that the defendant did not deliver to him the Holsteins.
Mr. Willis Morvant, a representative -of the Opelousas Production Credit Association, testified on behalf of the plaintiff. It appears that this gentleman had inspected the' cattle which were the subject of the sale, had approved the application of the plaintiff for a loan and disbursed the funds. He testified that the sale was to be of twenty-five head of each breed, as set out previously, and that the defendant actually pointed out to him the fifty cows which-were to be the basis of the sale. Accord-' ingly, a check from his company was issued in the amount of $12,000, payable to both' plaintiff and defendant. What happened subsequently was explained by this witness as follows:
“Q. Was that check endorsed and payment received and by whom? A. Mr. Des Ormeaux to Mr. Dufour.
■ "Qj‘ As full payment of the contract for 25 head of Holstein and 25 head of Jerseys ? ■ A. Yes, sir. ■
“Q. What happened just about the time the check was cashed? A. Well, I think it was around the end of.the month; I can’t tell you exactly what date it was, Mr. Des Ormeaux and Mr. Dufour came to my house. I live, in the country. Then, they had the check, Mr. D.cs Ormeaux had the check, and I -think they had Mr. — Mr.¡Des Ormeaux said they had two Holsteins that wasn’t there, had 23 Holsteins, wanted to return the check to Mr. Dufour, I understand. He asked me what I thought about it iso I told him the loan was made for 25 Holstein and 25 Jerseys, so . Mr. Dufour- said the other two Holsteins were — I think they were taken from Mr. Des Ormeaux’s dairy and brought to Pineyland, but I think they were taken by mistake; I think they had — if I am not mistaken — taken them, taken by some colored man. Mr. . Dufour had more cows than'that, taken the cows out and leaving Mr. Dufour’s they took two and Mr. Des Ormeaux couldn’t release the check until the cows were all there.
' “Q. Did Mr. Des Ormeaux release the check by endorsing his name and under what conditions ? A. Under the ’ condition that the two Holsteins were at Pineyland and they would be returned.
“Q. Was your company interested in the return of those two Holsteins for the completion of that contract? A: Naturally I took it upon myself to accept that. ■
“Q. Was that understanding made before you? A. Yes, sir.
“Q. By Mr. Dufour? A. Yes, sir.
“Q. That the two Holsteins that ■ had been taken from the herd would be returned? A. Yes, sir.”
At first this witness testified that- no agreement was made relative to the Jerseys which had been left in the plaintiff’s pasture. Subsequently, however, he testified that the defendant told the plaintiff to go ahead and use the Jerseys, if he cared to, and while they-were not to take the place of the Holsteins,- he did not know whether the plaintiff accepted the defendant’s offer or whether the plaintiff offered to return, the Jerseys to the defendant.
From the above and.'foregoing,, we think it clear that while the'original sale-contemplated the delivery of 25 head of' Holsteins and 25 head of Jerseys, that the delivery of 23 and 27 head, respectively, was made through an honest mistake. We think further that subsequent to the-discovery of this mistake by the parties, an agreement was made whereby the mistake was to¡ *153 be corrected by the substitution of two Holsteins for the two extra Jerseys left upon the place, this exchange to take place some time during the fall, either in the month of October or during the month of November. Just why this exchange agreement was never carried out is not clear. According to the plaintiff, the defendant would only deliver heifers, rather than cows, °and, according to the defendant, the plaintiff cóuld have had his choice and refused to ever inspect the cattle. Whatever may have been the reason for the failure of the parties to carry out the agreement, we are of the opinion that the plaintiff acted arbitrarily in refusing to inspect the proffered cattle; likewise, we might add, that the agreement may have well come to fruition had more cooperation been exhibited on the part of the defendant. The matter, as we see it, merely presents a case of two hard-headed business men, neither of whom would give in to the slightest extent and both of whom were principally content to rest upon what they considered their legal rights. Their proposed agreement was not fulfilled due to the lack of cooperation on the part of both and we think the trial judge wisely left them in the position in which they had placed themselves.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.